UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BARBARA CROWLEY,<br><br>    Plaintiff,<br><br>    v.<br><br>TOWN OF ENFIELD et al.,<br><br>    Defendants. | No. 3:14-CV-01903 (MPS) |

### RULING ON MOTION TO DISMISS

Barbara Crowley ("Crowley" or "Plaintiff") alleges that on December 4, 2011, police officers of the Town of Enfield (the "Town") used excessive force in arresting her and failed to provide her with adequate medical assistance for injuries she sustained during the arrest. She brought this action on November 14, 2014, against the Town, the Enfield Police Department (the "EPD"), Police Chief Carl Sferrazza ("Chief Sferrazza"), Officers Matthew Worden ("Officer Worden"), Jaime Yott ("Officer Yott"), Jason Rutovich ("Officer Rutovich"), John Doe, and Jane Doe (together, the "Defendants") in their official and individual capacities. (Corrected Notice of Removal, Compl., ECF No. 2 (hereafter "Compl.") at 3.) Defendants have moved to dismiss some of the claims in her complaint under Fed. R. Civ. P. 12(b)(6), arguing that they fail to state a claim upon which relief can be granted.

In Crowley's brief opposing the motion to dismiss, she withdrew her claims against the EPD, and withdrew her state and federal claims for false arrest and malicious prosecution, recklessness, statutory and common law negligence, and negligent infliction of emotional distress. (Pl.'s Opp. Br., ECF No. 49 at 2.) As a result, Counts Three, Four, Five, Seven, Thirteen and Fourteen are dismissed. For the reasons that follow, the Court also dismisses Crowley's claims under Article I, §§ 8 and 20 of the Connecticut Constitution (part of Counts Ten and

1

Twelve), her official capacity claims against the individual defendants, and her indemnification claim under Conn. Gen. Stat. § 7-465 (Count Sixteen). The case thus proceeds against the Town and against the police officers in their individual capacities on Counts One, Two, Six, Eight, Nine, Ten, Eleven, Twelve, and Fifteen.

## I.    STANDARD

Under Fed. R. Civ. P. 12(b)(6), the Court must determine whether the Plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570. Under *Twombly*, the Court accepts as true all of the complaint's factual allegations—but not conclusory allegations—when evaluating a motion to dismiss. *Id*. at 572. The Court must "draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). "When a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims, it is appropriate to grant defendants['] motion to dismiss." *Scott v. Town of Monroe*, 306 F. Supp. 2d 191, 198 (D. Conn. 2004). For a complaint to survive a motion to dismiss, "[a]fter the court strips away conclusory allegations, there must remain sufficient well-pleaded factual allegations to nudge plaintiff's claims across the line from conceivable to plausible." *In re Fosamax Products Liab. Litig.*, 2010 WL 1654156, at *1 (S.D.N.Y. Apr. 9, 2010).

## II.   BACKGROUND

### A. Factual Allegations

Crowley alleges that, on December 3, 2011, she and her husband, who was President of the Enfield Ramblers Youth Football Organization (the "Ramblers"), volunteered at the Ramblers' end-of-season banquet, which was held at the Mt. Carmel Society in Enfield, Connecticut ("Mt. Carmel"). (Compl. at ¶ 15.) Crowley and the other volunteers left helium

balloons in the supply closet at Mt. Carmel, intending to use them on the following day at the Town's "Torchlight Parade." (*Id.* at ¶ 16.) On December 4, at around 4:30 p.m., Crowley returned to Mt. Carmel to retrieve the balloons (*Id.* at ¶ 17), leaving her ten-year-old son in the car. (*Id.* at ¶ 18.) A woman who led a Bingo event at 5:00 p.m. (the "Bingo woman"), approached Crowley while she was in the supply closet, "and began to berate [her] for supposedly leaving the hall in a disorderly condition" after the Ramblers banquet on the previous night. (*Id.* at ¶ 19.) The Bingo woman told Crowley that she had contacted Carl Sferrazza, Chief of the EPD and President of Mt. Carmel. (*Id.* at ¶ 20.) Crowley told the Bingo woman that her husband would speak to the police. (*Id*. at ¶ 21.) Crowley left the building with the balloons and went to her car, where she discussed the situation with her son. (*Id.* at ¶ 22-23.)

Crowley then went back into the building to ask the people working in the kitchen whether the hall had been in a disorderly condition when they had arrived. (*Id.* at ¶ 24.) While Crowley was in the kitchen, the Bingo woman entered and called the EPD on her cell phone (Compl. at ¶ 26), and Crowley decided to wait for the police to arrive. (*Id.* at ¶ 27.) Officer Yott and Officer Rutovich arrived first, and they instructed Crowley to wait while they questioned the Bingo woman. (*Id.* at ¶ 28.) Two more officers arrived, one of whom was Officer Worden, and they began questioning Crowley. (*Id.* at ¶ 29.) Crowley answered all of their questions. (*Id.* at ¶ 30.)

After the officers finished questioning her, Crowley waited several minutes, and then asked the officers if she could go out to her car and check on her son. (*Id.* at ¶ 31.) Officer Worden nodded, indicating that it was okay for Crowley to do so. (*Id.* at ¶ 32.) Crowley walked toward the exit of the building, and Officer Worden grabbed her arm from behind, which made "a snapping sound and resulted in great pain." (*Id.* at ¶ 33.) Crowley complained about the pain,

but Officer Worden continued to twist her arm and yelled at her to "stop resisting." (*Id.* at ¶ 34.) A second officer then kicked Crowley's right knee, "forcing her to the floor and causing her additional excruciating pain." (*Id.* at ¶ 35.) While Crowley was on the floor, a third officer kneeled on her back and handcuffed her. (*Id.* at ¶ 36.) Crowley pleaded for help, but the officers did not answer. (*Id.* at ¶ 38.) Eventually, the officers called an ambulance for her. (*Id.* at ¶ 39.) As the officers carried Crowley outside to wait for the ambulance, Crowley's husband arrived, and he asked the officers to put Crowley down. The officers then "abruptly dropped [Crowley] onto the ground, hurting her further." (*Id.* at ¶¶ 40-41.) Crowley was charged with breach of the peace, resisting arrest, and assault on a police officer. (*Id.* at ¶ 43.) The charges were later dismissed. (*Id.* at ¶ 44.)

    B. **Procedural Background**

Crowley has sued the individual officers for using unreasonable force in violation of 42 U.S.C. § 1983 and the Fourth, Eighth, and/or Fourteenth Amendments to the United States Constitution (Count One), using unreasonable force in violation of her rights under Article I, §§ 7 and 9 of the Connecticut Constitution (Count Two), common law negligence (Count Three), common law reckless and/or willful conduct (Count Five), intentional infliction of emotional distress (Count Six), negligent infliction of emotional distress (Count Seven), assault and battery (Count Eight), failure to intervene in violation of 42 U.S.C. § 1983 and the Fourth and/or Fourteenth Amendments to the United States Constitution (Count Nine), failure to intervene in violation of Article I, §§ 7, 8, 9 and/or 20 of the Connecticut Constitution (Count Ten), failure to render adequate medical assistance in violation of 42 U.S.C. § 1983 and the Fourth and/or Fourteenth Amendments to the United States Constitution (Count Eleven), failure to render adequate medical assistance in violation Article I, §§ 7, 8, 9 and/or 20 of the Connecticut

Constitution (Count Twelve), and false arrest and malicious prosecution under federal law and the Connecticut Constitution (Counts Thirteen and Fourteen). Crowley has sued the Town for liability under Conn. Gen. Stat. § 52-557n (Count Four), the Town and Chief Sferrazza for violation of her rights under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution due to an inadequate policy and custom (Count Fifteen), and the Town for indemnification under Conn. Gen. Stat. § 7-465 (Count Sixteen).

The Defendants have moved to dismiss the federal and state claims for false arrest and malicious prosecution, the claims under Article I, §§ 8 and 20 of the Connecticut Constitution, all claims against the EPD, all official capacity claims against the individual defendants, the claims for recklessness, statutory and common law negligence, negligent infliction of emotional distress, and the indemnification claim under Conn. Gen. Stat. § 7-465. (ECF No. 34-1 at 2.)[1]

### III.  DISCUSSION

#### A.  Claims Under Article I, §§ 8 and 20 of the Connecticut Constitution

Crowley brought Counts Ten and Twelve against the Enfield Police Officers for violations of her rights under Article I, §§ 7, 8, 9 and/or 20 of the Connecticut Constitution for their failure to intervene and their failure to render adequate medical assistance, respectively. (Compl. at ¶¶ 66, 68). Defendants move to dismiss her claims under §§ 8 and 20, the due process and equal protection provisions, respectively.[2]

---

[1] All of the defendants except Officer Worden, who is represented by separate counsel, filed the motion on February 9, 2015.  Officer Worden filed a motion to dismiss on February 10, 2015, joining several portions of the other defendants' motion.  (ECF No. 35.)

[2] Article I, § 8 provides, in pertinent part, "[n]o person shall be . . . deprived of life, liberty or property without due process of law. . . ." Article I, § 20 provides that, "[n]o person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mental disability."

The Connecticut Supreme Court has recognized actions for money damages under Article I, §§ 7 and 9 of the Connecticut Constitution for unreasonable search and seizure and unlawful arrest. *Binette v. Sabo,* 244 Conn. 23, 710 A.2d 688 (1998). The "Court cautioned, however, that its holding 'does not mean that a constitutional cause of action exists for every violation of our state constitution.'" *Silvera v. Connecticut Dep't of Corr.*, 726 F. Supp. 2d 183, 199 (D. Conn. 2010) (quoting *Binette,* 244 Conn. at 47). "[W]hether to recognize a cause of action for alleged violations of other state constitutional provisions in the future must be determined on a case-by-case basis," *Binette,* 244 Conn. at 48, by examining factors such as the nature of the constitutional provision at issue, the nature of the purported unconstitutional conduct, the nature of the harm, separation of powers considerations, and other factors. *Id.*

Since *Binette,* "courts have been quite reluctant to recognize direct causes of action for violations of other provisions of the Connecticut Constitution." *Silvera*, 726 F. Supp. 2d at 199 (declining to exercise supplemental jurisdiction over, and denying without prejudice, claims brought against prison officials under Article I, §§ 9 and 20 of the Connecticut Constitution, because they raised "novel and undeveloped issues of state law," citing 28 U.S.C. § 1367(c)); *see also Schofield v. Magrey*, No. 3:12CV544 JBA, 2015 WL 521418, at *12 n.12 (D. Conn. Feb. 9, 2015) (dismissing such claims at summary judgment when plaintiff did not cite a single "case in which a Connecticut court has recognized a private cause of action for monetary damages under the due process and equal protection provisions article first, §§ 1, 8, 20 of the State Constitution, and courts in this state have consistently declined to do so."); *Utecht v. Maniago*, No. 3:13-CV-00804 MPS, 2014 WL 7404562, at *7 (D. Conn. Sept. 23, 2014) (dismissing such state constitutional claims because "Connecticut courts have not recognized an implied cause of action under the due process provision of the Connecticut Constitution"); *Lopez v. Smiley*, 375 F. Supp.

2d 19, 26 (D. Conn. 2005) (denying plaintiff's request to amend his complaint to assert state constitutional claims in light of the "explicit statement in *Binette* that the Supreme Court did not intend to create a cause of action for money damages for every alleged violation of the Connecticut state constitution, and the fact that federalism and comity concerns strongly suggest that recognition of new state constitutional torts should be determined on a case-by-case basis by Connecticut courts in the first instance."); *Ward v. Housatonic Area Reg'l Transit Dist.*, 154 F. Supp. 2d 339, 356 (D. Conn. 2001) (dismissing such claims and finding "that there is no private cause of action for monetary damages under the equal protection and due process provisions (Art. First, § § 1, 8 and 20) of the Connecticut Constitution."); *but see Doe v. City of Hartford*, No. CIV.A3:03CV1454 (JCH), 2004 WL 1091745, at *3-4 (D. Conn. May 13, 2004) (denying motion to dismiss such claims because the court was "not prepared to conclude that the Connecticut Supreme Court would not allow a cause of action for monetary damages under Section 8.").

Because Crowley has not cited, and the Court is not aware of, any state court appellate decisions that have recognized a *Binette*-style cause of action under §§ 8 and 20 of Article I of the Connecticut Constitution, and because the decision whether to recognize such a cause of action raises a "novel or complex issue of state law," 28 U.S.C. § 1367(c)(1)—as more fully explained by this Court in *Silvera,* 726 F. Supp. 2d at 199, and *Lopez,* 375 F. Supp. 2d at 26—the Court declines to exercise supplemental jurisdiction over, and dismisses without prejudice, Plaintiff's claims under §§ 8 and 20 of Article I.

### B. Official Capacity Claims Against Individual Defendants

Crowley sued the Town and the EPD officers in their individual and official capacities. Defendants argue that Crowley's claims against the EPD officers in their official capacities must

be dismissed because they are redundant and duplicative of the claims against the Town. (Def.'s Br., ECF No. 34-1, at 8.)

"As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (internal citations omitted); *Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007) ("An official capacity suit against a public servant is treated as one against the governmental entity itself."). "There is no longer a need to bring official-capacity actions against local government officials, for under *Monell* [*v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)] local government units can be sued directly for damages and injunctive or declaratory relief." *Graham*, 473 U.S. at 167 at n.14.

Crowley argues that the Court should not dismiss the official capacity claims against the officers because she may have claims for injunctive or declaratory relief against certain officers and because the officers should remain defendants "until discovery fleshes out the full extent of the alleged rampant Constitutional violations." (Pl.'s Opp. Br., ECF No. 49 at 8.) Crowley does not explain, however, why any injunctive or declaratory relief she might seek (the prayer for relief in her current complaint specifies only damages and attorneys' fees) "would not properly be entered against the [Town] as the real party in interest, rather than [the officers]." *Croft v. Vill. of Newark*, 35 F. Supp. 3d 359, 369 (W.D.N.Y. 2014). Therefore, because the Town is named in the complaint, the Court dismisses the claims against the individual EPD officers in their official capacities as redundant.

### C. Indemnification Claim (Count Sixteen)

Count Sixteen of Crowley's complaint alleges that the Town is liable for all damages that the individual officers may become obligated to pay as a result of the lawsuit. (Compl. at ¶ 76.) Conn. Gen. Stat. § 7-465(a) provides that a municipality will indemnify a municipal employee who is liable for damages as a result of his actions in the performance of his duties and in the scope of his employment. The statute provides as follows:

> Any town, city or borough, notwithstanding any inconsistent provision of law . . . shall pay on behalf of any employee of such municipality . . . all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property, except as set forth in this section, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty. . . . No action for personal physical injuries or damages to real or personal property shall be maintained against such municipality and employee jointly unless such action is commenced within two years after the cause of action therefor arose and written notice of the intention to commence such action and of the time when and the place where the damages were incurred or sustained has been filed with the clerk of such municipality within six months after such cause of action has accrued. Governmental immunity shall not be a defense in any action brought under this section. In any such action the municipality and the employee may be represented by the same attorney if the municipality, at the time such attorney enters his appearance, files a statement with the court, which shall not become part of the pleadings or judgment file, that it will pay any final judgment rendered in such action against such employee.

Conn. Gen. Stat. Ann. § 7-465(a).[3]

Defendants—except Officer Worden—argue that Crowley's indemnification claim fails as a matter of law because she failed to comply with the statute's requirements that (1) she bring the action "within two years after the cause of action" arose, and (2) she provide "written notice of her intention to commence such action and of the time when and the place where the damages

---

[3] Although it does not affect this ruling, the Court notes that the Connecticut legislature recently amended Conn. Gen. Stat. § 7-465. Effective October 1, 2015, the following clause will be deleted: "if the municipality, at the time such attorney enters his appearance, files a statement with the court . . . that it will pay any final judgment rendered in such action against such employee."

were incurred or sustained . . . with the clerk of such municipality within six months after such cause of action has accrued." Conn. Gen. Stat. § 7-465(a). Crowley did not file a notice of intent to sue with the Town Clerk until August 20, 2014 (Compl., ECF No. 2 at ¶ 6.), over two years after the incident occurred (December 4, 2011).[4] Crowley brought this lawsuit on November 14, 2014, which was almost three years after the incident.

The purpose of such a notice requirement is to enable the municipality to "make a timely investigation of the claim and to determine the existence and extent of liability." *Fraser*, 173 Conn. at 55. Connecticut courts have demanded strict compliance with this notice requirement:

> Because a statutory notice requirement, such as is contained in [§] 7-465, creates a right of action which is in derogation of the common law, it demands strict compliance. In particular, where the statute creating this right of action contains a specific time or notice limitation that requirement is a jurisdictional prerequisite.

*Tolchinsky v. Town of E. Lyme*, No. 534710, 1999 WL 643513, at *4 (Conn. Super. Ct. Aug. 13, 1999) (internal citations and quotation marks omitted) (finding plaintiffs' claim barred by the statute of limitations under Conn. Gen. Stat. § 7-465 when plaintiffs notified the town clerk several years after the cause of action accrued).

Citing *Fraser v. Henninger*, 173 Conn. 52 (1977), Crowley argues that "a municipality waives its right to assert the defense" of inadequate or defective notice under Conn. Gen. Stat. § 7-465 "when the same counsel appears jointly for the municipality and its employees and fails to file the statutorily prescribed indemnification statement." (Pl.'s Opp. Br., ECF No. 49 at 11.) With the exception of Officer Worden, the same attorneys who are representing the Town are also representing the defendant officers, and these attorneys have not filed a statement with the

---

[4] Crowley's complaint says that this notice of intent to sue is attached to it as "Exhibit A," but it is not attached to the versions of the complaint that appear on the docket.

Court asserting that the Town will pay any final judgment rendered in this action against the employees.

*Fraser* does not, however, stand for the proposition for which Crowley cites it. Critical to the finding of waiver in *Fraser* was the fact that the defendant town *did* file the "statutorily prescribed indemnification statement," representing to the Court that it would pay any judgment against its employee. *Fraser,* 173 Conn. at 58 (concluding that "*such a statement* constitutes a waiver of the municipality's right to assert any defense which it might have . . . ." to the notice requirement (emphasis added)). As noted, here, the Town filed no such statement.

Crowley nonetheless argues that counsel's joint appearance, by itself, means that the Town "has effectively consented to indemnify the officers" because "otherwise, separate counsel would have had to appear for the officers in order to cure any conflict of interest." (Pl.'s Br., ECF No. 49 at 12). This argument ignores the language of the statute, which sets forth the limitations period and notice requirement in a sentence that is independent of, and in no way conditioned on, the separate sentence describing the joint representation of the municipality and its employee:

> No action . . . shall be maintained against such municipality and employee jointly unless such action is commenced within two years after the cause of action therefor arose and written notice of the intention to commence such action and of the time when and the place where the damages were incurred or sustained has been filed with the clerk of such municipality within six months after such cause of action has accrued…. In any such action the municipality and the employee may be represented by the same attorney if the municipality, at the time such attorney enters his appearance, files a statement with the court . . . that it will pay any final judgment rendered in such action against such employee.

Conn. Gen. Stat. Ann. § 7-465(a). Nothing in this language suggests that the filing of a joint appearance by an attorney on behalf of a municipality and its employee—without a statement accepting indemnification—has any effect on the distinct requirements that the plaintiff bring her

claim within two years of its accrual and provide the municipality with six months' notice. The provision conditioning the joint representation of the municipality and its employee on the filing of an indemnification statement may protect the employee from conflicted representation, but it does not appear to vest any rights in the injured third party—the plaintiff—, let alone excuse that party from complying with independent procedural requirements. Rather, any failure to adhere to the joint representation provision, and any conflict of interest, would implicate the rights of the defendants—rights they could choose to waive under certain circumstances. *Pitchell v. City of Hartford*, 247 Conn. 422, 431 (1999) (interpreting statute and noting that "[a]ny potential conflict of interest is a matter between the defendants, and can be waived by those parties.") Finally, at least in these circumstances, it would add insult to injury to an attorney's clients for a court to find that the attorney's conflicted representation, by itself, had the effect of waiving the clients' statutory defenses.

Because neither the limitations period nor the notice requirement has been waived, and because it is apparent from the complaint that Crowley complied with neither (*see* Compl. at ¶ 6), the claim under § 7-465 of the Connecticut General Statutes is dismissed.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:   Hartford, Connecticut
         July 9, 2015